UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OLUKAYODE A. ADEWOLE,

Plaintiff,

v.

COMCAST CABLE
COMMUNICATIONS,
MANAGEMENT, LLC,

Defendant.

Case No. 19-cv-06762

Judge John Robert Blakey

## MEMORANDUM OPINION & ORDER

Plaintiff Olukayode A. Adewole sues Defendant Comcast Cable Communications Management, LLC, alleging that Defendant violated the Fair Credit Reporting Act, 15 U.S.C. § 1621s-2(b) *et seq*. (FCRA) and the Fair Credit Billing Act, 15 U.S.C. § 1666 *et seq*. (FCBA). [35]. Defendant now moves to dismiss the operative (second amended) complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). [39]. For the reasons explained below, this Court denies Defendant's motion.

## I. Background

### A. The June 2018 Credit Report

Around June 2018, Plaintiff checked his credit report in preparation for a refinancing and noticed a negative report. [35] at ¶ 9. The report reflected that non-party Diversified Consultants Collection Agency posted a negative report for a $1,119.00 debt to Defendant dated June 18, 2018. *Id*. at ¶ 10. Plaintiff believed the

1

debt resulted from identity theft, and, as a result, he initiated a dispute with non-parties Experian Credit Bureau and Diversified. *Id.* at ¶¶ 11–12. Shortly thereafter, he also submitted an "identity theft fraud packet" to Defendant. *Id.* at ¶ 13. By early August, Plaintiff sent additional notices to Comcast, as well as non-parties Diversified, Equifax, and TransUnion explaining that he did not owe the debt, that his credit report incorrectly reported it, and that he did not own an account with Defendant. *Id.* at ¶¶ 14–15.

Plaintiff alleges, on information and belief, that Equifax, Experian, and TransUnion formally notified Comcast and Diversified of Plaintiff's dispute of the debt. *Id.* at ¶ 16. Neither Defendant nor Diversified responded to any of Plaintiff's written disputes, though the debt soon disappeared from Plaintiff's account, leading Plaintiff to believe he succeeded in his dispute. *Id.* at ¶¶ 17–19.

**B.     The October 2018 Credit Report**

Then, around October 19, 2018, Plaintiff received a demand from a debt collection agency, Convergent Outsourcing, Inc., demanding payment for the Comcast debt. *Id.* at ¶ 20. Plaintiff noticed that Convergent addressed its demand letter to an "Olukayode Adew*ale*" though Plaintiff's last name is "Adew*ole*." *Id.* (emphasis added). Plaintiff disputed the debt with Convergent, Experian, Equifax, and TransUnion within thirty days of the demand. *Id.* at ¶ 21. Plaintiff alleges, again, on information and belief, that Experian, Equifax, and TransUnion formally notified Comcast and Convergent of this second dispute. *Id.* at ¶ 22.

Convergent responded to the dispute by mid-November, determining the debt to be valid. *Id.* at ¶ 23. In its response, Convergent attached invoices generated by

2

Defendant to a person named Olukayode Adewale—who, again, has a different last name than Plaintiff—residing at 9201 S. Paxton Avenue, Chicago, IL 60617. *Id.* at ¶ 25. Plaintiff claims he has never lived at this address, nor has it ever been associated with him. *Id.* at ¶ 26. A few weeks later, Plaintiff received a letter from Experian stating the negative report no longer appeared on his credit report, leading Plaintiff to believe he succeeded in his second dispute. *Id.* at ¶¶ 29–30.

### B.    The June 2019 Credit Report

Around June 19, 2019, however, Plaintiff received a third demand for the debt, this time from non-party Southwest Credit Systems, LP. *Id.* at ¶ 31. Upon checking his credit report, Plaintiff noticed that it once again reflected the negative report associated with the Comcast debt. *Id.* at ¶ 32.

### C.    Plaintiff's Claims

Having enough, Plaintiff filed this lawsuit, claiming that Defendant "failed to respond or conduct a reasonable investigation into the disputes," even though Plaintiff provided notice to Defendant disputing the debt in June, July, and August 2018. *Id.* at ¶ 33. Plaintiff further alleges that his refinancing failed because Defendant furnished false credit information on three separate occasions to consumer reporting agencies. *Id.* at ¶¶ 33, 35. Plaintiff additionally asserts that Defendant maintains "an established pattern and practice of erroneously billing and reporting individuals for debts they do not owe." *Id.* at ¶ 34.

Plaintiff's second amended complaint asserts two claims. In Count I, Plaintiff claims that Defendant violated the FCRA by failing to investigate after it received notice from consumer reporting agencies that Plaintiff disputed the debt. *Id.* at ¶¶

36–50. In Count II, Plaintiff alleges that Defendant violated the FCBA by failing to respond to, or investigate, his written notices of a billing error and by continuing to seek collection of the debt despite numerous disputes by Plaintiff. *Id*. at ¶¶ 51–62. Defendant moves to dismiss both claims under Federal Rule of Civil Procedure 12(b)(6).

## II.     Legal Standard

Under Rule 12(b)(6), this Court must construe the second amended complaint in the light most favorable to Plaintiff, accept as true all well-pleaded facts, and draw reasonable inferences in their favor. *Yeftich v. Navistar, Inc.*, 772 F.3d 911, 915 (7th Cir. 2013). Statements of law or conclusory factual allegations, however, need not be accepted as true. *Id.* Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## III.    Analysis

### A.     Count I: Plaintiff's FCRA Claim

In Count I, Plaintiff alleges that Defendant violated the FCRA by failing to conduct an investigation after it received notice from the consumer reporting agencies (CRA) that Plaintiff disputed the debt. [35] at ¶¶ 36–50.

The FCRA requires "furnishers," such as banks, credit lenders, and collection agencies, to conduct an investigation, and if necessary, correct any inaccuracies about information it provided to a CRA. *See* 15 U.S.C. § 1681s-2(b); *Denan v. Trans Union*

*LLC*, 959 F.3d 290, 294 (7th Cir. 2020); *Rollins v. Peoples Gas Light & Coke Co.*, 379 F. Supp. 2d 964, 966 (N.D. Ill. 2005). This duty to investigate and report, however, only arises after the furnisher receives formal notice of the dispute from the CRA. *See* 15 U.S.C. § 1681s-2(b); *Gulley v. Pierce & Assocs., P.C.*, 436 F. App'x 662, 665 (7th Cir. 2011). As such, "to survive dismissal, a plaintiff must sufficiently allege that a credit reporting agency informed the furnisher of the dispute so as to trigger a duty by the furnisher under Section 1681-2(b)." *Freedom v. Citifinancial, LLC*, No. 15 C 10135, 2016 WL 4060510, at *4 (N.D. Ill. July 25, 2016); *Ginnan v. Guaranteed Rate, Inc.*, No. 15-c-5813, 2016 WL 302146, at *2 (N.D. Ill. Jan 25, 2016).

Defendant does not dispute that it qualifies as a "furnisher" under the FCRA. *See* [39] at 8. Defendant instead maintains that it never received formal notice from any CRA that Plaintiff disputed a debt and that Plaintiff improperly sues Defendant solely on "information and belief" that one or more CRAs notified Defendant of the dispute, even though the answer is "readily ascertainable without discovery." *Id.* at 8–10.

To be sure, 15 U.S.C. § 1681i(a)(6)(B) supplies a "mechanism for consumers to receive the name and address of any furnisher contacted by a CRA during investigation of a disputed debt." *Thompson v. Advocate S. Suburban Hosp.*, No. 15-CV-9184, 2016 WL 4439942, at *2 (N.D. Ill. Aug. 23, 2016) (citing *Neiman v. Chase Bank, USA, N.A.*, No. 13 C 8944, 2014 WL 3705345, at *7 (N.D. Ill. July 25, 2014)). Thus, Defendant correctly notes that the FCRA provides an "easy avenue" for Plaintiff to find out whether Defendant received notice from any CRAs, without forcing Defendant into discovery. *Varnado v. Trans Union, LLC*, No. 03 C 6937, 2004

5

WL 1093488, at *3 (N.D. Ill. Apr. 29, 2004).  Had Plaintiff availed himself of this "easy avenue," Defendant argues, he would have learned that Defendant did not, in fact, receive notice, and he could not in good faith maintain his FCRA claim.

Yet the FCRA does not require any CRA to notify Plaintiff when it notifies Defendant of the dispute; nor does it impose a duty upon Plaintiff to formally investigate a CRA's procedures before filing suit.  *Ginnan*, 2016 WL 302146, at *2, 3. Thus, while courts in this district uniformly require a plaintiff bringing a claim under § 1681s-2(b) to allege his or her belief that the defendant received notice of a dispute by a CRA,  *Stewart v. JP Morgan Chase Bank, N.A.*, No. 18 C 7584, 2020 WL 444248, at *4 (N.D. Ill. Jan. 28, 2020) (collecting cases), they do not similarly require the plaintiff to engage in pre-suit investigation to determine whether the defendant in fact received notice, *Ginnan*, 2016 WL 302146, at *3.

Here, Plaintiff alleges that Defendant received notice of Plaintiff's dispute through one or all of the CRAs he identifies in his complaint—Experian, Equifax, and Transunion.  [35] ¶¶ 16, 21.  Although Plaintiff does not allege any direct communications between any CRAs and Defendant, Plaintiff does claim that he complained about the debt to the CRAs and that, on information and belief, the CRAs then sent notice to Defendant.  *Id.* at ¶¶ 14–16, 21–22.  These allegations suffice to state notice under the FCRA.  *See Ginnan*, 2016 WL 302146, at *2; *Freedom*, 2016 WL 4060510, at *4.

For the reasons stated above, this Court denies Defendant's motion to dismiss Count I.  This Court cautions Plaintiff, however, that his failure to pursue the "easy avenue" afforded by the FCRA to discover whether Defendant received notice "might

6

subject him to sanctions later if his claim is baseless." *Ginnan*, 2016 WL 302146, at *3 (quoting *Varnado*, 2004 WL 1093488, at *3). Therefore, moving forward, Plaintiff should ensure he possesses a non-frivolous basis in maintaining his FCRA claim against Defendant. That is, if Plaintiff discovers that Defendant did not receive notice, he should voluntarily dismiss his FCRA claim if it, in fact, lacks a sufficient basis to proceed.

## B.    Count II: Plaintiff's FCBA Claim

In Count II, Plaintiff claims that Defendant violated Section 1666 of the FCBA by mistaking him for the alleged original obligor of the debt (Adewale), and by failing to respond or investigate after Plaintiff informed it of its mistake. [35] at ¶¶ 54–61.

Congress enacted the FCBA, 15 U.S.C. § 1666 *et seq.*, to specify "the required procedures of both the creditor and the obligor with respect to billing errors on credit card statements." *Danqing Huo v. Synchrony Bank*, No. 19-CV-03881, 2020 WL 2128729, at *2 (N.D. Ill. May 5, 2020). A creditor's duties arise under the FCBA when an obligor sends the creditor written notice of a billing error within 60 days of receiving a statement; the creditor must then, within certain time limits, either correct the statement or explain to the obligor why the statement is accurate. *See* 15 U.S.C. § 1666(a). Section 1666, however, applies solely to creditors of "open-end credit plans." *Foster v. PNC Bank, N.A.*, No. 12-CV-3130, 2020 WL 1445635, at *4 (N.D. Ill. Mar. 25, 2020); *Jeffries v. Dutton & Dutton, P.C.*, No. 1:05-cv-04249, 2006 WL 1343629, at *6 (N.D. Ill. May 11, 2006). The term "open-end credit plan" means "a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge

7

which may be computed from time to time on the outstanding unpaid balance." 15 U.S.C. § 1602(j).

Defendant moves to dismiss Plaintiff's FCBA claim, arguing that Plaintiff fails to sufficiently allege that Defendant constitutes a provider of open-end credit plans under 15 U.S.C. § 1666. [39] at 10–12. And true, Plaintiff's allegations on this issue remain somewhat conclusory: Plaintiff alleges "on information and belief" that Defendant "entered into an open-end credit plan" with a person named Olukayode Adewale, "for phone and/or cable services, including charges for equipment for personal use in a household"; and "on information and belief" that Defendant's contract with Adewale "contemplated repeated transactions and included a finance charge on the outstanding balance." [35] at ¶¶ 52–53. But to support these conclusory allegations, Plaintiff also attaches Exhibit D, which shows at least two months of billing history between Defendant and the original obligor, a late charge on the outstanding balance, and fees for unreturned equipment. [35] at 25–36 (Ex. D).

Plaintiffs may properly plead "on information and belief" when defendant primarily controls the required information. *Freedom*, 2016 WL 4060510, at *4. Plaintiff argues that he remains at disadvantage because he is not the original obligor of the Debt, so he is not privy to the terms of the contract between Defendant and the original obligor, Adewale. [47] at 10. This Court finds this argument persuasive. Without discovery, Plaintiff cannot allege more than his information and belief that Defendant entered into an open-end credit plan with Adewale, the original obligor, which could bring Defendant within the scope of the FCBA.

For the reasons stated above, at this stage in the litigation, Plaintiff plausibly alleges his FCBA claim. This Court, accordingly, denies Defendant's motion to dismiss Count II.

## IV. Conclusion

For the reasons stated herein, this Court denies Defendant's motion to dismiss [39]. Defendant shall file its answer by February 22, 2021. This Court also sets a close of fact discovery deadline for June 4, 2021. By May 21, 2021, the parties shall file a joint status report concerning their progress with discovery; they should also indicate whether they will need expert discovery and whether they plan to file dispositive motions. This Court will set case management dates in a future order. If the parties decide at any time that a settlement conference could be productive, they should call chambers to request one, and this Court will refer the case to the assigned Magistrate Judge for that purpose.

Dated: January 19, 2021

Entered:

John Robert Blakey
United States District Judge